**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

SPINNAKER INSURANCE COMPANY, *as subrogee of Cynthia A. Stokes, et al.*,

Plaintiffs,

v.

Case No. 2:26-cv-279

SAMSUNG ELECTRONICS AMERICA, INC., *et al.*,

Defendants.

**OPINION & ORDER**

Plaintiffs Spinnaker Insurance Company and Cynthia Stokes filed this products liability action after a fire occurred at Stokes's home. The complaint alleges that an electric range bearing defective knobs sold by Defendant BestBuy.com, LLC and manufactured by Defendant Samsung Electronics America, Inc. caused the fire. The defendants jointly moved to dismiss the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF Nos. 27 (motion), 28 (memorandum). The plaintiffs plausibly allege that Samsung violated a duty of care in designing an electric range that was reasonably safe for its foreseeable use. However, the plaintiffs fail to raise a reasonable inference that Best Buy and its related entities violated any duty imposed by Virginia law or had any knowledge of the purported defect. Therefore, the motion will be granted in part and denied in part; only Counts I and III will be allowed to proceed.

## I. BACKGROUND

At this stage, the Court assumes the facts alleged in the complaint are true. On July 17, 2022, Stokes purchased the range online from BestBuy.com for use in her home kitchen. ECF No. 23 ¶¶ 11–12. The range's model number was "NE63T8511SG 6.3." *Id.* ¶ 11. The range was delivered to her home on September 1, 2022. *Id.* ¶ 12. Prior to the fire, the range was never turned on, tested, or used by Stokes or anyone else. *Id.* ¶ 15.

On November 10, 2022, there was a fire in Stokes's home. ECF No. 23 ¶ 16. That morning, Stokes's son, niece, and mother left the home around 11:00 a.m. *Id.* ¶ 17. In order to leave, all three individuals walked through the kitchen and past the range. *Id.* ¶ 18. There were combustible materials on or near the range, so neither Stokes's son, niece, nor mother intentionally turned any of the range's knobs to the 'on' position. *Id.* ¶¶ 26–27. There were also no pets in the home that day. *Id.* ¶ 19.

Returning approximately 90 minutes after they left, the son, niece, and mother noticed a fire and called 911. ECF No. 23 ¶¶ 20, 24. The Virginia Beach Fire Department responded to the emergency call and extinguished the fire. *Id.* ¶ 30. After investigating, firefighters concluded that a knob on the right side of range was in the 'on' position and that the combustible material on the stove ignited. *Id.* ¶ 31. The fire patterns on the surface of the range displayed damage and discoloration on the range's right rear surface burner. *Id.* ¶ 32.

On August 8, 2024, Samsung recalled the range model that Stokes had purchased. ECF No. 23 ¶ 49. Samsung had received more than 300 reports of

accidental activation of the range by humans or pets, resulting in approximately 250 fires. ECF No. 23-3 at 1–7. When the patent for the range was first filed in 2019, Samsung admitted the range "needs to include a knob stopper for preventing an unintended operation of the knob assembly or a knob cap for opening and closing the knob assembly." ECF No. 23 ¶ 43. A 2020 notice Samsung published indicated that, without knob covers or locks installed after use, brushing against the front-mounted knobs of this model range could accidentally activate the appliance. *Id.* ¶ 45.

## II. LEGAL STANDARD

### A. Motions to Dismiss Under Fed. R. Civ. P. (12)(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B. Virginia Products Liability Law

Under Virginia law, there are three theories of liability for a negligence products liability action: design defect, manufacturing defect, and failure to warn or instruct. A plaintiff first must establish that the defendant breached a duty "to exercise th[e] degree of care [that] an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 469 (Va. 2018) (citation and quotation omitted). Both design and manufacturing defect theories rest on the same principle: Manufacturers have a duty to exercise ordinary care in designing or manufacturing products that are reasonably safe for their intended use. *See Turner v. Manning, Maxwell & Moore, Inc.*, 217 S.E.2d 863, 868 (Va. 1975); *Evans*, 810 S.E.2d at 469.

To establish that there was a design defect, the plaintiffs must "show that the manufacturer failed to meet objective safety standards prevailing at the time the product was made." *Evans*, 810 S.E.2d at 469 (quotation omitted). A manufacturing defect requires proof that a product failed to conform to its intended design. Restatement (Third) of Torts: Product Liability § 2(a) (1997) (a product "contains a manufacturing defect when the product departs from its intended design"); *see S. States Co-op. Inc. v. Doggett*, 292 S.E.2d 331, 335 (Va. 1982).

To prevail on either a design or manufacturing defect theory of negligence, a plaintiff must establish that the product contained a defect that rendered it unreasonably dangerous for ordinary or foreseeable use, that the defect existed when

it left the defendant's hands, and that the defect caused the plaintiff's injury. *Logan v. Montgomery Ward & Co.*, 219 S.E.2d 685, 687–88 (Va. 1975).

To show an unreasonably dangerous defect exists, a plaintiff may reference "governmental regulations, [] industry norms and practices, [and] reasonable consumer expectations . . . [as] objective evidence that the product is defective." *Evans*, 810 S.E.2d at 470. "It is not necessary that the circumstances establish [the defect] as the proximate cause with such certainty as to exclude every other possible conclusion . . . [or] to negative every possibility that the accident occurred in some extraordinary manner which would relieve the defendant." *White Consol. Indus., Inc. v. Swiney*, 376 S.E.2d 283, 285 (Va. 1989) (citation omitted).

A claim for a breach of implied warranty is analyzed under the same three elements. *Logan,* 219 S.E.2d at 687; *see also Chestnut v. Ford Motor Co.*, 445 F.2d 967, 968–69 (4th Cir. 1971) ("The only difference between negligence and strict tort liability is that the plaintiff attempting to prove negligence must prove an additional element . . . that the defect was the result of the defendant's failure to exercise due care."). A negligence or implied warranty claim may be proved with evidence "sufficient to establish that the result alleged is a probability rather than a mere possibility." *Doggett*, 292 S.E.2d at 335.

Manufacturers may only be held liable for negligence or implied warranty under a failure to warn theory "if [the manufacturer] knows or has reason to know that its product is dangerous." *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 634 (Va. 1992). The plaintiffs must show: (1) the manufacturer or seller knew or

had reason to know the product was dangerous for its intended use, (2) the manufacturer or seller had no reason to believe those who use the product would realize its dangerous condition, and (3) the manufacturer failed to exercise reasonable care to inform buyers of the product's condition or the facts that make the product likely to be dangerous. *Id.*

On a negligence claim, the manufacturer will be liable for failure to warn if its conduct is unreasonable. *Adimasu v. Nissan Motor Co., Ltd.*, Nos. CL930528, CL930529, CL930530, CL930538, 1995 WL 17044240, at *1 (Va. Cir. June 2, 1995). That is, if the manufacturer "knows or has reason to know that the [product] is or likely is to be dangerous for the use for which it is supplied." *Featherall v. Firestone Tire & Rubber Co.*, 252 S.E.2d 358, 369 (Va. 1979) (citing Restatement (Second) of Torts: Product Liability § 388 (1965)) (quotation marks omitted). But under an implied warranty theory, the inquiry is whether the lack of an adequate warning rendered the product unreasonably dangerous. *See Morgen Indus., Inc. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996) ("A product is unreasonably dangerous if it is . . . unaccompanied by adequate warnings concerning its hazardous properties").

## III. ANALYSIS

### A. Type of Defect

The plaintiffs advance their claims on both a design defect and a manufacturing defect theory. The complaint fails to allege a manufacturing defect because the plaintiffs do not identify any manufacturing error or anomaly that is unique to the particular unit the plaintiff purchased.

The plaintiffs allege that Samsung "[f]ail[ed] to manufacture the [] [r]ange in compliance with the UL standards for household electric range control knobs, making [the knobs] susceptible to inadvertent activation by unintentional contact." ECF No. 23 ¶ 100. But the plaintiffs have failed to allege that the range did not conform to its intended design. In fact, the primary allegation on the face of the amended complaint is that the range bore front-mounted range knobs that were *designed* with a high risk of accidental activation leading to an increased risk of fires. ECF No. 23 ¶¶ 37, 40, 41, 43. Because there are no allegations in the amended complaint sufficient to raise a reasonable inference that the range bore a manufacturing defect, the Court will only consider defect claims under a design defect theory.[1]

[1] The plaintiffs allege that Samsung "fail[ed] to perform quality control inspection and testing that would have revealed defects and deficiencies that rendered the [] [r]ange unreasonably dangerous." ECF No. 23 ¶ 100(b)-(c). But failure to test or inspect are not independent theories of products liability under Virginia law. *See Jones v. Ford Motor Co.*, 559 S.E.2d 592, 604 (Va. 2002) ("the duty to test is subsumed within the general duty of the manufacturer to avoid acting in a negligent manner"). And, as alleged here, the failure to test or inspect alone is not sufficient to establish that the range bore a manufacturing defect. In Virginia, a product "must be fit for the ordinary purposes for which it is to be used." *Logan*, 219 S.E.2d at 687. A products liability action only arises where a product was unreasonably dangerous for its ordinary purposes and where that dangerous condition existed when the product left the defendant's hands. *Id.* A manufacturer's failure to test or inspect instead goes to the factual inquiry of whether a manufacturer breached a duty to exercise ordinary care in assembling, manufacturing, designing, or adequately warning of the dangers of a product. *See Jones*, 559 S.E.2d at 604; *Morgen Indus., Inc.*, 471 S.E.2d at 492 ("whether a product is unreasonably dangerous is a question of fact").

**B. Claims against Samsung**[2]

Samsung argues that the plaintiffs fail to state either a negligence or an implied warranty claim under a design defect theory because the plaintiffs do not plausibly allege that but for the purported defect, the home fire would not have happened. ECF No. 28 at 5.

Before reaching causation, the plaintiffs must sufficiently allege that the range contained a defect that rendered it unreasonably dangerous for ordinary or foreseeable use and that the defect existed when it left the defendant's hands. *Logan*, 219 S.E.2d at 687.

The plaintiffs have alleged that the range bore knobs that rendered the range unreasonably dangerous for ordinary[3] or foreseeable use. The control knobs on the range were able to move into the 'on' position with a single motion. ECF No. 23 ¶ 40. The size, shape, and position of the knobs exposed the knobs to accidental contact and thus increased the risk that such contact would turn a knob and ignite the burners on the range. *Id.* ¶ 41. Samsung recalled the range because "[f]ront-mounted knobs

---

[2] In Count II, the plaintiffs allege a separate claim for "liability for defective product." ECF No. 23 at 18. It appears that this claim merely restates the claims in Counts I and III. And as products liability actions in Virginia may proceed only under a negligence or implied warranty theory, Count II will be dismissed.

[3] The defendants refute the plaintiffs' purported ordinary purpose of the range. ECF No. 35 at 16–17. The plaintiffs describe the range's ordinary purpose to include "occupancy of the kitchen, the placement of commonplace household items on or near an inactive cooktop, and the expectation that the appliance will remain inert unless intentionally engaged." ECF No. 32 at 25. The Court declines to address the validity of the plaintiffs' purported ordinary uses because, as discussed below, foreseeable use is enough here.

on the ranges [could] be activated by accidental contact by humans or pets, posing a fire hazard." ECF No. 23-3 at 2; *see* ECF No. 23 ¶ 49. The Consumer Product Safety Commission publicized the recall and reaffirmed that the knobs were hazardous because they could be accidentally activated. ECF No. 23 ¶ 50; ECF No. 23-3 at 6. Individuals could foreseeably walk past the oven and ignite knobs that appear to be waist level. And consumers would not expect such a risk, making the defect unreasonably dangerous.

The complaint contains sufficient facts to support a reasonable inference that the knobs were in this condition when the range left Samsung's hands. The range was developed, engineered, designed, manufactured, assembled, labeled, tested, distributed, and produced by Samsung. ECF No. 23 ¶ 36. Stokes had not turned on, tested, or used the range. *Id.* ¶ 15. And the fact that Samsung recalled this range because of the risk of accidental activation gives rise to the inference that the knobs were in this purported condition when the range left Samsung's possession. *Id.* ¶¶ 45–46, 52–54.

Samsung argues that the plaintiffs rely on an impermissible series of inferences because the complaint does not allege that any particular person or thing contacted the range. The defendants rely on Fourth Circuit case law that "warn[s] against claims . . . that depend on 'stacking inference upon inference.'" ECF No. 28 at 10 (citing *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017)). But that Fourth Circuit rule requires that securities fraud plaintiffs plead facts with particularity to raise a strong inference that a defendant meets the scienter

requirement under 15 U.S.C. § 78u-4(b)(2), the Private Securities Litigation Reform Act. *Maguire Fin*, 876 F.3d at 548. It has no bearing where the Court is *required* to make all reasonable inferences in a plaintiff's favor. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 428 (4th Cir. 2018). Of course, the Court "need not accept as true unwarranted inferences," but at this stage, the Court "must assume all [well-pled facts] to be true." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (quotations omitted). And here, the plaintiffs plead facts that create a reasonable inference of causation.

The plaintiffs must only show that the range's defect "in natural and continuous sequence, unbroken by an efficient intervening cause, produce[d] [the fire], and without which [the fire] would not have occurred." *Wells v. Whitaker*, 151 S.E.2d 422, 428 (Va. 1966). That is, the plaintiffs must show there is a causal connection "sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference." *Id.* (citation and quotations marks omitted).

The sequence of events presented here—taken together with other repeated occurrences of accidental activation—create a nonspeculative causal chain. And contrary to Samsung's argument, the plaintiffs have no obligation to rule out "other plausible non-defect causes." ECF No. 35 at 6. The plaintiffs' "allegations [only] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And at this stage, Virginia law does not require "that the circumstances establish negligence as the proximate cause with such certainty as to exclude every other

possible conclusion" in order for a plaintiff to succeed on their claim. *White Consol. Industry, Inc.*, 376 S.E.2d at 286 (citation omitted).

Because the plaintiffs have sufficiently alleged a negligence[4] or implied warranty claim against Samsung, the motion to dismiss with respect to Counts I and III will be denied.

**C. Claims Against Best Buy Entities**

The plaintiffs also bring negligence and implied warranty claims against Best Buy and related entities. Because the plaintiffs have failed to allege that Best Buy and its related entities violated any duty imposed by Virginia law or had any knowledge of the purported defect, Counts IV and V will be dismissed.

***i. Design Defect***

The plaintiffs allege Best Buy breached its implied warranty by selling a negligently designed product. For a plaintiff to prevail on a design defect claim, they first "must show that the manufacturer 'owes a legally recognized duty to design' a product in a certain way to ensure that the product 'is reasonably safe for the purpose for which it is intended.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 280 (4th Cir. 2021) (quoting *Holiday Motor Corp. v. Walters*, 790 S.E.2d 447, 454–55 (Va. 2016)). The defendants argue that, as a passive retailer, Best Buy and its related entities cannot be held liable because its duties are narrow. ECF No. 28 at 15–16.

[4] The plaintiffs also allege, in the alternative, that Samsung failed to warn consumers about the risks of the purported defective knobs. ECF No. 23 ¶ 100(l)-(p). Because Samsung does not address that claim in its motion to dismiss, Counts I and III may proceed on either a design defect or failure to warn theory.

Virginia courts have not explicitly articulated a seller's duty to avoid distributing a product with a negligent design. But Virginia law indicates that a seller's knowledge of the danger that a product presents is essential. Some Virginia courts have posited that a seller's duty must fall beneath that of a manufacturer's because a seller—unless it holds itself out as a manufacturer—could not reasonably avoid defective product design. *Dameron v. Fort Worth Steel & Mach. Corp.*, No. LE 1626, 1985 WL 306781, at *8 (Va. Cir. Mar. 26, 1985). Instead, sellers have a duty to warn consumers about dangers that they know, or should know, accompany a product. *Id.* And sellers additionally have a duty to inspect or test a product if they *know or have reason to know* that a product might be unreasonably dangerous or defective. Va. Model Jury Instr.—Civil, No. 34.170 (2026) (emphasis added).

The plaintiffs do not plead failure to warn as part of their implied warranty claim, so this analysis is confined to whether Best Buy, as a seller, violated a duty to avoid negligent design. Because Virginia law does not explicitly recognize such a duty and the plaintiffs otherwise do not sufficiently allege that Best Buy had or should have had any knowledge that the range bore a design defect at the time of sale, Count IV must be dismissed.

***ii. Failure to Warn***

The plaintiffs allege that Best Buy was negligent because it failed to provide pre- or post-sale warnings to those who purchased this model range and thus breached a duty to warn. But the plaintiffs do not sufficiently allege that Best Buy

knew or had reason to know that the range was dangerous for its intended use because of its knobs. *See Owens-Corning Fiberglas Corp.*, 413 S.E.2d at 634.

To the plaintiffs, because Samsung had records that Stokes purchased the range and accordingly alerted her about the recall, Best Buy too had reliable information that could have alerted Stokes to the hazards of the range after purchase. ECF No. 23 ¶¶ 81–83, 134.[5] But the plaintiffs do not allege that Best Buy had any knowledge of the purported defect prior to the recall.[6] Because the plaintiffs proceed on a negligence theory, the question is whether Best Buy's conduct in selling the

---

[5] The plaintiff asserts that "[p]rior to the [f]ire[,] Best Buy was aware of the inadvertent activation of the control knobs" on the range "and the potential for fires to occur as a result." ECF No. 23 ¶ 78. To that end, the plaintiffs argue that by "failing to undertake an . . . evaluation of known inadvertent range activation reports to determine whether the products . . . offered for sale were safe and free from defects[,]" Best Buy was negligent. ECF No. 23 ¶ 135(d). But manufacturers are not insurers of a product's safety, and so too, sellers are not insurers either. *Owens-Corning Fiberglas Corp.*, 413 S.E.2d at 634. The duty to warn only arises where a manufacturer "knows or has reason to know that its product is dangerous." *Id.* The plaintiffs do not allege how or why Best Buy might have known of this danger prior to the home fire. Without any allegation that Best Buy was aware that the range was unreasonably dangerous, the plaintiffs do not raise a reasonable inference that Best Buy breached a pre-sale duty to warn.

[6] There is competing case law as to whether Virginia law recognizes post-sale failure to warn claims under a negligence theory against manufacturers or sellers. *Compare Hart v. Savage*, No. L-04-1663, 2006 WL 3021110, at *3 (Va. Cir. Oct. 19, 2006) (declining to adopt a post-sale duty to warn after weighing competing case law and concluding such a duty should be legislated) *with Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1045–46 (4th Cir. 1983) ("the duty to warn is continuous and is not interrupted by manufacture or sale of the product"). The duty to warn, however, is premised on a manufacturer's "superior knowledge of his product" to protect others from danger; so it would follow that a seller could not and would not be expected to maintain such knowledge after a sale. *Featherall*, 252 S.E.2d at 366. And Virginia courts have acknowledged that many other jurisdictions that do recognize a duty to warn will not impose liability where "there is no service obligation or there has been no actual service of the product." *Harris v. T.I., Inc.*, 413 S.E.2d 605, 610 (Va. 1992).

range without a warning about the knobs was unreasonable and that relies on Best Buy's knowledge of the defect. *Featherall*, 252 S.E.2d at 369. Absent facts that could support an inference that Best Buy knew about the problem before the recall was issued, the Court cannot reach such a conclusion even at this stage.

## V. CONCLUSION

Defendants Samsung and Best Buy's motion to dismiss (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**.[7]

Counts II, IV, and V are **DISMISSED**.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
October 27, 2026

[7] The Court's decision to deny the motion to dismiss as it relates to claims against Samsung is in no way intended to communicate that this case will survive at summary judgment. At the motion to dismiss stage, the Court is required to make all reasonable inferences in favor of the plaintiffs. But the Court encourages the parties to assess whether the remaining allegations in this case are strong enough to survive more exacting scrutiny.